In the matter of the attachment of FREEMAN B. BIRD and FRÈEMAN B. BIRD, Jr. *vs.* THE STEAMBOAT JOSEPHINE, her tackle &c.

The judiciary act of congress of 1789, section 9, (*Statutes at Large*, 73,) declaring that district courts of the United States shall have "exclusive cognizance of all civil causes of admiralty and maritime jurisdiction," saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it, does not deprive state courts of the right to enforce by attachment a lien against a steamboat running between the city of New York, (her home port,) and a port in a sister state, for supplies furnished her under the act of the legislature of the state of New York "to provide for the collection of demands against ships and vessels," passed April 24, 1862.

Exclusive jurisdiction in such cases is not vested in courts of admiralty of the United States.

APPEAL from an order made at Chambers, by Justice GEORGE G. BARNARD.

The respective parties consented that the appeal should be heard upon the following statement of facts:

On the 10th day of December, 1866, Freeman B. Bird and Freeman B. Bird, Jr. the attaching creditors in the above entitled proceeding, filed specifications of lien against the steamboat Josephine, her tackle, &c. pursuant to the provisions of the act of the legislature of the state of New York, entitled "an act to provide for the collection of demands against ships and vessels," passed April 24, 1862, for supplies furnished by them at the city of New York, to the said steamboat between the 1st day of June, 1866, and the 5th day of December, 1866. During the said time the said steamboat was enrolled at the custom house in the city of New York, and was engaged in running between the port of New York and the county of Monmouth, in the state of New Jersey. The residence of the owner of the steamboat did not appear.

On the eleventh day of April, 1867, the attaching creditors duly obtained from Justice BARNARD a warrant of attachment against said steamboat to enforce their said lien, and thereupon, on the 12th day of April, 1867, the sheriff of

the city and county of New York, seized the said steamboat, and made his return of such seizure on the 12th day of April, 1867. On the 4th day of May, 1867, upon an affidavit setting forth the proceedings of the said attaching creditors, the nature and amount of their claim, and the belief that, by a late decision of the Supreme Court of the United States it was adjudged that the state courts had no jurisdiction to enforce a lien based upon claims of the character of the said attaching creditors, and that the power to enforce such lien was vested exclusively in courts of admiralty jurisdiction of the United States, an order to show cause was duly granted by his honor Justice BARNARD, upon motion of the attorney for the owner of the said steamboat, directing that the said attaching creditors show cause before him, on the 10th day of May, 1867, why the warrant of attachment theretofore issued by him on the 11th day of April, 1867, and all proceedings under the said warrant, should not be set aside and vacated, and staying, in the meantime, all proceedings on the part of said attaching creditors.

Thereafter, upon a hearing of the said order to show cause, the said justice rendered his decision, and thereupon an order was duly entered herein on the 7th day of June, 1867, in the words and figures following :

" It satisfactorily appearing to me by the papers and affidavits on file herein, and by the admissions of the respective counsel upon the argument of this motion, that the above entitled proceeding has been commenced by F. B. Bird & Son, the attaching creditors therein, to enforce a lien filed by them against the above named steamboat Josephine, pursuant to the provisions of an act of the legislature of the state of New York, entitled " an act to provide for the collection of demands against ships and vessels," passed April 24, 1862, for supplies furnished to said steamboat at the port of New York by the said attaching creditors for the use of the crew of the said steamboat Josephine, between the 1st day of June, 1866, and the 5th day of

Bird *v.* Steamboat Josephine.

December, 1866, during all of which last mentioned time the said steamboat was engaged in running between the port of New York and the county of Monmouth in the state of New Jersey ; and it also appearing that the said steamboat is duly enrolled and registered at the custom house in the city of New York, the home port of said vessel, and that a warrant of attachment to enforce the said lien was issued on the 11th day of April, 1867, and that in pursuance thereof the said steamboat has been seized and is now held by the sheriff of the city and county of New York.

And a motion having been made on behalf of the owner of the said steamboat to vacate and discharge the said warrant of attachment, upon the ground that the officer issuing said warrant had not jurisdiction therefor, the provisions of the statute conferring such power being in contravention of the constitution of the United States, and of the acts of congress vesting jurisdiction in admiralty cases exclusively in the courts of admiralty of the United States. Now, on hearing Charles A. Rapallo, Esquire, of counsel for the owner of said steamboat, in support of the said motion, and Erwin I. Spink, Esquire, of counsel for the said attaching creditors in opposition, it is hereby ordered and adjudged, upon the grounds hereinbefore set forth, that the said motion to vacate the said warrant of attachment be, and the same hereby is granted.

And it is further ordered that the sheriff of the city and county of New York do discharge said steamboat from his said levy thereon, and surrender the possession of the said steamboat seized and held by him, as hereinbefore mentioned, to the owner thereof.

And it is further ordered that all proceedings under this order be stayed, pending the appeal herefrom to the general term of this court, by the said attaching creditors, provided the said attaching creditors take the said appeal within ten days from the service hereof."

On the 19th day of June, the said attaching creditors

duly appealed from the said order to the general term of the Supreme Court.

*E. I. Spink,* for the appellants. I. By the judiciary act of 1789, section 9, (*Stat. at Large,* 73,) it is enacted that the district courts of the United States shall have "exclusive cognizance of all civil causes of admiralty and maritime jurisdiction," saving to suitors in all cases the right of *a common law remedy,* where the common law is competent to give it.

II. This enactment is constitutional, and deprives state tribunals and officers of power to take cognizance of any civil case of admiralty or maritime jurisdiction, except for the purpose of administering a "common law remedy." (*The Moses Taylor,* 4 *Wal.* 411, 430, 431. *The Hine* v. *Trevor, Id.* 555, 568, 569.) "It must be taken, therefore, as the settled law of this court, that wherever the district courts of the United States have original cognizance of admiralty causes by virtue of the act of 1789, that cognizance is exclusive, and no other court, state or national, can exercise it, with the exception always of such concurrent remedy as is given by the common law." (4 *Wal.* 568.)

III. The proceeding by attachment against the vessel, authorized by the statute in question, is not a common law remedy, and therefore not within the saving clause of the judiciary act. (4 *Wal.* 427, 431, 571.)

IV. The statute in question is therefore unconstitutional and void, so far as it attempts to afford a remedy *in rem* in cases which are cognizable in the admiralty. (*The Moses Taylor,* 4 *Wal.* 427. *The Hine* v. *Trevor, Id.* 569.)

V. The foregoing propositions are incontestable. The only proposition remaining to be established is that the demand of the attaching creditors in this case was founded upon a maritime contract, and was cognizable in the admiralty.

VI. The conceded facts are, that the demand was for supplies furnished to the vessel at the city of New York, while

Bird *v.* Steamboat Josephine.

she was engaged in trading between the port of New York and a port in New Jersey ; that the vessel was enrolled at the custom house in the port of New York. (*See recitals in the order.*) It is stated that New York was the home port of the vessel. Nothing is stated as to her ownership. It may as well be stated here that she was owned by the Delaware and Raritan Bay Railroad Company, a New Jersey corporation. This fact may or may not be material, but if material it is better for both parties that it should be considered by the court.

VII. Assuming that New York was the home port of the vessel, still the claim of the attaching creditor was within the cognizance of the admiralty courts, and therefore within their exclusive jurisdiction. All demands for supplies furnished to vessels are maritime claims and within the exclusive jurisdiction of the admiralty, excepting only the cases of vessels engaged in the navigation of the internal waters of a state, or the lakes and the rivers connecting therewith. It is not the ownership of the vessel, but the commerce in which she is engaged, which determines the question whether the contract is maritime.

VIII. Contracts with vessels engaged in purely internal navigation are not maritime contracts, and are not within the jurisdiction of the admiralty. (*Maguire* v. *Card,* 21 *How.* 248.) Neither are claims of builders of vessels within the jurisdiction of the admiralty. The contract is made on land, to be performed on land. (*People's Ferry Co.* v. *Beers,* 20 *How.* 393.) As to certain vessels navigating the lakes and connecting rivers, the jurisdiction of the admiralty is made concurrent with that of the states by the act of congress of February 26, 1845. (*The Hine.* v. *Trevor,* 4 *Wal.* 566.) The state lien laws are therefore operative as to the above mentioned classes of cases, and inoperative as to all others.

IX. Subject only to those exceptions, contracts for supplies furnished to a vessel in her home port are as much

within the jurisdiction of the admiralty as contracts for supplies furnished in a foreign port. The only difference is that the courts of admiralty, in the exercise of their lawful powers, have from time to time made rules granting different remedies or process in these two classes of cases. (*Steamer St. Lawrence*, 1 *Black*, 522; *see head notes* 5, 6, 7, 8.) The libel in that case was for supplies furnished in the home port (*p.* 523.) (*12th rule*, 3 *How*. 3. 21 *id*. 1.)

X. The description of process issued does not determine nor affect the question of jurisdiction. The courts of admiralty are courts of limited and not general jurisdiction. Except in cases of admiralty jurisdiction, they cannot issue any process whatever. It being settled that they can issue process *in personam* in the case of a domestic vessel for supplies furnished in her home port, it is thereby established that such cases are cases of admiralty jurisdiction. Neither has the question of lien any thing to do with the question of jurisdiction. If the courts of admiralty have jurisdiction of a case, that jurisdiction is exclusive, whether or not the maritime law recognizes a lien in such a case. If the state law creates a lien when the maritime law does not, such lien can only be enforced by the state by common law remedies, for the state courts can only act in pursuance of the saving clause in the act of 1789. The states cannot, by creating liens which the admiralty does not recognize, obtain the right to exercise in admiralty cases, powers which are not within the terms of the saving clause. (*Steamer St. Lawrence*, 1 *Black*, 526.) Congress, by the act of 1792, authorized the Supreme Court to prescribe the forms of proceeding, and it was by virtue of that power that the rules of 1844 and 1858 were made. (1 *Black*, 528.) Those rules expressly affirm the jurisdiction of admiralty in cases of supplies to domestic as well as foreign vessels, but prescribe different remedies. Where the supplies are furnished in a foreign port, they are by maritime law presumed to be furnished on the credit of the vessel, and a lien is given.

When furnished in the home port, they are, in the courts of the United States, presumed to be furnished on the credit of the owner, and the creditor must seek his remedy against the person and not against the vessel. In either case, the contract is equally within the jurisdiction of a court of admiralty. (*The General Smith,* 4 *Wheat.* 438. *The St. Lawrence,* 1 *Black,* 529.) By the general maritime law and the laws of continental Europe, there is no distinction between claims for supplies furnished in the home port and those furnished in foreign ports. There is a lien in both cases which may be enforced in admiralty. (*Ben. Ad.* § 272. 2 *Bell's Com.* 525, 526, 527. 1 *Sumner,* 79.)

This was also the law of England until the reign of Charles II, when all jurisdiction in the case of material men was taken from the courts of admiralty. (*Ben. Adm.* §§ 95, 99, 269, 271. 1 *Sumner,* 79.)

The jurisdiction of admiralty in such cases is maintained in the United States. (*Id.* § 257, 261, 269.)

XI. Under the rule adopted by the U. S. Supreme Court in 1844, process *in rem* could have been issued in this case by a court of admiralty. This rule was abrogated in 1858, but it is still in the power of the Supreme Court to restore it. (*See* 1 *Black,* 526, 529, 530.)

The fact that in certain cases of admiralty jurisdiction the courts of admiralty choose to refuse to suitors a particular description of process which they have power to grant, does not confer jurisdiction in such cases on state tribunals or officers, or deprive the jurisdiction of the admiralty of its exclusive character. (*See* 1 *Black,* 529, 530.)

It is a mere question of practice. (*Id.* 530.)

XII. The conclusion arrived at in the case of the Moses Taylor and the Hine, that the state lien laws are inoperative as to all cases which are cognizable in the courts of admiralty, is conceded to be new, and in conflict with the jurisdiction hitherto exercised by the states.

Mr. Justice Miller, in delivering the opinion of the court

in the Hine case, remarks upon the fact of such jurisdiction having been exercised by the state courts until the case of the Hine and the Moses Taylor, and says that the question as to the right of the states to exercise it is for the first time raised in the Supreme Court in those cases. (*See* 4 *Wal.* 567, 568.)

Whatever dicta or decisions there may be to the contrary, are therefore overruled by the cases in 4 *Wallace.*

*C. A Rapallo,* for the respondent.

*By the Court,* SUTHERLAND, J.   We held preliminarily on the hearing, that the order appealed from on the warrant of attachment must be deemed to have been made by the court, or by the justice who made it, sitting or acting as a judge of the court, and not in the exercise of any ministerial power given by the statute under which the warrant was issued, and, therefore, that the order was appealable.   It must be assumed, I think, on the appeal papers, that the claims of the attaching creditors, were for supplies furnished to the steamboat while in the port of New York ; that she was a domestic vessel and in her home port, though plying between the port of New York and a port in New Jersey. The argument of the counsel for the respondent, on the merits, concisely stated, is, the constitution of the United States extends the judicial power of the United States to "all cases of admiralty and maritime jurisdiction.   The judiciary act of 1789, section 2, (1 *Stat. at Large,* 77,) gives to the district courts of the United States " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, &c. saving to suitors in all cases the right of a common law remedy, where the common law is competent to give it."   This act is constitutional, and deprives state tribunals and officers of the power to take cognizance of any civil case of admiralty or maritime jurisdiction, except for the purpose of administering a

common law remedy, referring to the cases of *The Moses Taylor* and. *Hine* v. *Trevor*, (4 *Wallace*,) and to no other case.) The proceedings by attachment against the steamboat *Josephine* under the New York act, was not a common law remedy. Assuming that New York was the home port of the vessel, that the claim of the attaching creditors was for supplies furnished in the home port, yet the claim was within the cognizance and jurisdiction of admiralty courts, and therefore within their exclusive jurisdiction.

Conceding that the cause of action on the implied or express contract to pay for the supplies was within the jurisdiction of the admiralty courts, so that they could concurrently with the state courts administer a common law remedy ; that is, the remedy by suit or action *in personam*, and conceding that the proceedings by attachment under the New York act, was not a common law remedy, it appears to me that the defects in the argument are two : First, though it acknowledges the saving clause in the judiciary act of 1789, it ignores the reasonable and legitimate effect of it ; and, second, it assumes that the cases of *The Moses Taylor*, (4 *Wal.* 427,) and *The Hine* v. *Trevor*, (*Id.* 569,) decide that such concurrent jurisdiction to administer a common law remedy, and a common law remedy only, deprives state tribunals and officers of the power to administer any other than a common law remedy. As to the first defect, the jurisdiction of a court in a given case may be defined as the power to administer a legal remedy, or legal remedies in that case. Its jurisdiction may be limited to one remedy— two or more courts may have jurisdictiction to administer the same remedy concurrently. The jurisdiction of one court to administer a certain remedy concurrently with another court, in a given case, cannot be exclusive of such ·concurrent jurisdiction of such other court, nor of the jurisdiction of such other court to administer any other remedy in such case, not inconsistent or interfering with such concurrent jurisdiction. No argument of counsel—no decision

of a court—can alter the meaning of the words concurrent and exclusive. Of course, the jurisdiction of a court in a given case, may be exclusive of any jurisdiction, of any remedy, in any other court ; but if its jurisdiction is limited to a certain remedy, it has no jurisdiction to be interfered with by the administration of a different remedy in another court.

The argument of the counsel assumes that the admiralty courts have general jurisdiction in a case like this, and could administer the process or remedy *in rem,* but have not been permitted by the Supreme Court of the United States to administer it. Since the abolition of the rule recognizing state liens, the cases are conclusively the other way. (*See The General Smith,* 4 *Wheat. ; The St. Lawrence,* 1 *Black ; Maguire* v. *Card,* 21 *How.* 251, *and other cases cited, in my opinion in the matter of The Steamship Circassian, ante p.* 490.) The saving clause in the judiciary act implies that the district courts of the United States might administer a common law remedy concurrently with the state courts. The Supreme Court of the United States has conceded, (*see Maguire* v. *Card, supra,*) that the jurisdiction of the district court in cases like this is limited to actions *in personam ;* that they had no jurisdiction *in rem* independent of states liens, and till the abolition of the rule recognizing state liens, in 1858, such liens were repeatedly recognized and enforced by the district courts, and, on appeal, by the Supreme Court of the United States, which could be done, consistently, only on a construction of the judiciary act that the jurisdiction *in rem* of the district courts was and could be exclusive only when they had it, and that when their jurisdiction was limited to the administration of a common law remedy concurrently with state courts or officers, it was not exclusive of state process or remedy *in rem.*

Besides, broad as the provision of the constitution of the United States is, leaving it to congress or the courts organized by congress to define and declare what causes admiralty

Bird *v.* Steamboat Josephine.

or maritime jurisdiction does or shall extend to, I am not willing to concede that congress could place the district courts in the position, (if I may be excused for referring to vulgar fable in illustration,) of " the dog in the manger." Sometimes a question fairly put is the end of logic. If, in answer to the epigrammatic remark, "it is not a remedy in the common law courts which is saved, but a common law remedy," I ask, without receiving a negative answer, whether it follows that states cannot give suitors any remedy other than in addition to the common law remedy, I must treat the question as the end of my logic on that point. As to the second defect of the counsel's argument, I do not think it can be said that *The Moses Taylor* and *The Hine* v. *Trevor* cases, decide that the provision of the judiciary act deprives state tribunals and officers of power to take cognizance of any civil case of admiralty or maritime jurisdiction, except for the purpose of administering a common law remedy.

Nor do I see that the sentence quoted in the counsel's points, from Justice MILLER'S opinion justifies that proposition. These cases do decide that the jurisdiction which the district courts have in maritime cases is exclusive, except where it is concurrent by the saving clause in the judiciary act, but they do not decide, and the court is not called upon to decide in them, that the district courts have any jurisdiction in cases like this, except, to administer the concurrent common law remedy. These cases do not decide that in a case like this, the judiciary had conferred, or could confer, on the district courts a jurisdiction *in rem* to be laid idly by and not exercised, for the purpose of depriving state tribunals and officers of such jurisdiction. My opinion in the matter of the steamship *Circassian*, which will be submitted to my associates with this, was perhaps more elaborate than the occasion called for, and certainly might, if I had time, be revised and condensed to advantage, but my conclusion in that case, as to the extent and application of the

principle of exclusive jurisdiction declared in *The Moses Taylor* and *The Hine* v. *Trevor* cases, was, I think, correct, and therefore I think the order appealed from should be reversed, but without costs.

Order reversed.

[NEW YORK GENERAL TERM, November 4, 1867. *Leonard, Clerke* and *Sutherland,* Justices.]